UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

FAIR ISAAC CORPORATION,
a Delaware corporation,

        Plaintiff,

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,
a New York corporation,

        Defendant.

Civil File No. 05-2081 DWF/SRN

**COMPLAINT**

**(JURY TRIAL DEMANDED)**

---

Plaintiff Fair Isaac Corporation ("Fair Isaac"), for its Complaint against Defendant International Business Machines Corporation ("IBM"), states and alleges as follows:

## THE PARTIES

1. Fair Isaac is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Minneapolis, Minnesota.

2. IBM is, on information and belief, a corporation duly organized and existing under the laws of the State of New York with its principal place of business in Armonk, New York.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), in that this action includes a claim arising under

SCANNED
SEP 0 8 2005
U.S. DISTRICT COURT APLS

the patent laws of the United States, 35 U.S.C. § 1 et seq., together with state law claims over which this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a). This Court also has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332, in that this is an action between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4. This Court has personal jurisdiction over IBM. IBM engages in continuous and systematic business activities in this District. IBM is authorized to do business to do business in Minnesota, and has appointed a registered agent to accept service of process in this District pursuant to Minn. Stat. §303.13.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(b), in that defendant resides in this District pursuant to 28 U.S.C. § 1391(c) because it is subject to personal jurisdiction in this District.

## FAIR ISAAC'S BLAZE ADVISOR SOFTWARE

6. Fair Isaac is a world leader in the design and development of decision management technology.

7. One of Fair Isaac's products is the Blaze Advisor business rules software, which allows businesses to automate, manage and execute their decision-making processes.

8. A business may make certain types of decisions, such as whether to offer a customer a credit card or whether to underwrite an insurance policy, hundreds or thousands of times a day. Automating these decisions allows the

business to make decisions more quickly, more consistently, and more cost-effectively than if human intervention were required at every step.

9. Since it was first introduced in approximately 1997, Fair Isaac has continuously developed improvements and innovations to expand and enhance its business rules technology. Over time, updated versions of the Blaze Advisor software have been released.

10. In the Blaze Advisor software, as currently configured, the complex factors and variables that go into a business decision-making process can be broken down into smaller elements. To take a simple example, a bank's decision to offer a low-interest rate credit card can be broken down into smaller elements, based on factors such as the applicant's status as a customer, income level, loan payment history and the like. The Blaze Advisor software addresses each of these subsidiary elements and decides whether a low-interest rate credit card should be offered.

11. The Blaze Advisor software, as currently configured, also allows business managers, as opposed to computer programmers, to modify the parameters that guide the decision-making process in response to market conditions. For example, in the credit card example used above, the manager of the bank's credit card unit may want to increase the minimum income requirement. The Blaze Advisor software allows a business person to make this modification on his or her own without the assistance of technical support staff.

12. The current version of the Blaze Advisor software also allows the component steps of one business decision to be used, as appropriate, in other business decisions. For example, a customer's income level is relevant not just to whether that customer should be offered a low interest rate credit card, but to many other decisions, such as to whether that customer qualifies for a mortgage or car loan, and what interest rate should be offered. For this reason, the current Blaze Advisor software architecture allows components of one decision-making process to be used in other decision-making processes, avoiding the proliferation of redundant software.

## THE FAIR ISAAC/IBM RELATIONSHIP

13. In approximately 1999, a predecessor company to Fair Isaac (for convenience, Fair Isaac and its predecessors are all referred to as "Fair Isaac") began working with IBM and its NetCommerce product group.

14. NetCommerce (now called Websphere) is an IBM product designed to provide a variety of businesses solutions relating to online marketing, sales and other customer interactions.

15. IBM sought to include a business rules capability into its NetCommerce product. After evaluating a number of options, IBM chose to incorporate Fair Isaac's Blaze Advisor into the NetCommerce product. Only Fair Isaac's Blaze Advisor software was able to provide the high level business rules functionality that IBM sought to include in the NetCommerce product.

16. On November 12, 1999, Fair Isaac and IBM entered into a Licensed Works Agreement and a related Statement of Work. These contracts were meant to allow IBM to access the Blaze Advisor software and include it in the NetCommerce product. The execution of these contracts marked the start of a close business partnership between Fair Isaac and IBM.

17. Fair Isaac went to great lengths to ensure that that Blaze Advisor was fully compatible with the NetCommerce product. In compliance with its obligations under the Licensed Works Agreement and the Statements of Work, Fair Isaac provided IBM with substantial technical information regarding Blaze Advisor, including object code and implementation details, and worked to incorporate Blaze Advisor into NetCommerce.

18. By the following year, 2000, Fair Isaac and IBM had successfully incorporated Blaze Advisor into NetCommerce and IBM began shipping the newly augmented NetCommerce to customers, all pursuant to its contracts with Fair Isaac.

19. Fair Isaac expected that its relationship with IBM would be a long-term business partnership, with future versions of Blaze Advisor being incorporated into future versions of NetCommerce, and for a time this appeared to be the case. Fair Isaac believed that IBM had the same expectation of a long-term business partnership, and IBM never gave any indications to the contrary. Fair Isaac met with IBM to explain additional features that would be incorporated into later versions of Blaze Advisor. As IBM modified and expanded its

NetCommerce product, Fair Isaac worked to ensure that IBM's additional features were fully supported by Blaze Advisor.

20. In November 2000, Fair Isaac and IBM entered into a second Statement of Work, superceding the prior Statement of Work. There were, over time, at least seven amendments to the Statements of Work.

21. At all times, Fair Isaac understood and expected that the information and know-how it was communicating to IBM would be used solely for the purpose of incorporating Blaze Advisor into NetCommerce pursuant to the contracts.

22. As later versions of Blaze Advisor were released, they were incorporated into the NetCommerce product.

23. IBM later changed the name of the product from NetCommerce to Websphere.

24. Fair Isaac always treated its relationship with IBM as one involving the highest level of confidence and candor. Despite IBM's conduct as alleged in this Complaint, Fair Isaac continues to act as a Strategic Business Partner of IBM in other areas and continues to honor and respect that relationship.

25. On at least two occasions, at IBM's request, Fair Isaac met with IBM teams that were working to develop "home-grown" business rules technology for IBM. Unknown to Fair Isaac, these IBM teams were trying to develop technology that they hoped would supplant Blaze Advisor in the Websphere product. At IBM's request, Fair Isaac explained to these IBM teams why the IBM approaches to business rules technology would not work. These

6

presentations were beyond the scope of the Licensed Works Agreement and Statements of Works and amendments. Members of the IBM Websphere product team were present for at least a portion of these presentations. Fair Isaac made these presentations with the understanding and expectation that these disclosures were confidential and that they would not be used to develop competitive products.

26. IBM has notified Fair Isaac that it plans to terminate its license to use Blaze Advisor in the Websphere product effective as of October 2005, and notified Fair Isaac that it would not be incorporating Blaze Advisor into its next version of Websphere, Websphere Process Server V6 (which IBM may also refer to as Websphere Business Integration Server V6).

27. The business rules technology that IBM is now including in Websphere Process Server V6 incorporates many of the proprietary features of Blaze Advisor.

## THE '566 PATENT

28. On March 8, 2005, the United States Patent Office awarded Fair Isaac United States Patent No. 6,865,566 ("the '566 Patent"), entitled "Approach for Reusing Business Rules."

29. The '566 Patent relates to aspects of Fair Isaac's business rules technology employed in later versions of the Blaze Advisor software.

30. Fair Isaac owns all right, title and interest in the '566 Patent. The '566 Patent is valid and enforceable. A true and correct copy of the '566 Patent is attached hereto as Exhibit A.

## COUNT I
## (PATENT INFRINGEMENT)

31. The allegations of Paragraphs 1 to 30 of the Complaint are realleged and incorporated herein by reference.

32. IBM has infringed one or more claims of the '566 Patent by making using, offering for sale and/or selling in the United States a product known as the Websphere Process Server V6, and by practicing methods covered by the claims of the '566 Patent.

33. The IBM Websphere Process Server V6 and related methods practiced by IBM meet all the limitations of one or more claims of the '566 Patent, either literally or under the doctrine of equivalents.

## COUNT II
## (BREACH OF CONTRACT)

34. The allegations of Paragraphs 1 to 33 of the Complaint are realleged and incorporated herein by reference.

35. On November 12, 1999, Fair Isaac and IBM entered into a Licensed Works Agreement and a Statement of Work permitting IBM to incorporate Blaze Advisor software into the Websphere product. Fair Isaac and IBM entered into a

further Statement of Work in 2000. The Statements of Work were the subject of multiple written amendments executed by Fair Isaac and IBM.

36. Fair Isaac has fully performed its obligations under the Licensed Works Agreement, the Statements of Work, and amendments.

37. Pursuant to the Licensed Works Agreement, the Statements of Work, and amendments, IBM incurred a duty, implied by law, to behave in good faith and deal fairly with Fair Isaac.

38. IBM has, on information and belief, breached its obligations under the Licensed Works Agreement, the Statements of Work, and amendments by using the information disclosed by Fair Isaac pursuant to these contracts, to develop replacement software for Blaze Advisor.

39. IBM has, on information and belief, violated its duty of good faith and fair dealing, and acted in a manner calculated to deprive Fair Isaac of the value of the Blaze Advisor software and the benefits of its contracts with IBM.

40. As a result of IBM's breach of contract, Fair Isaac has been injured in an amount to be determined at trial, but in excess of $75,000.00, exclusive of costs and interest.

## COUNT III
### (MISAPPROPRIATION OF TRADE SECRETS)

41. The allegations of Paragraphs 1 to 40 of the Complaint are realleged and incorporated herein by reference.

42. IBM obtained access to Fair Isaac's trade secrets relating to Fair Isaac's business rules technology under circumstances giving rise to a duty to maintain the secrecy and limit the use of these trade secrets. These trade secrets include, without limitation, Fair Isaac's explanation to IBM of the reasons why IBM's efforts to develop a business rules technology would not work.

43. Fair Isaac's trade secrets derive actual and potential independent economic value from not being known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure and/or use.

44. Fair Isaac has taken reasonable measures to maintain the secrecy of its trade secrets.

45. IBM knew, or had reason to know, that Fair Isaac intended and expected the secrecy of Plaintiffs' trade secrets to be maintained, and that Fair Isaac intended and expected that IBM would not use these trade secrets to develop a business rules product to replace Blaze Advisor in the Websphere product.

46. On information and belief, IBM, knowing that it possessed Fair Isaac's trade secrets, deliberately misappropriated these trade secrets, at least by using them to develop a business rules product to replace Blaze Advisor in the Websphere product.

47. IBM has misappropriated Fair Isaac's trade secrets in violation of the Uniform Trade Secrets Act, as enacted by Minnesota, Minn. Stat. §325C.01 et seq.

48. IBM has misappropriated these trade secrets intentionally, willfully, and maliciously, all to the profit of IBM and to the damage and injury of Fair Isaac, which has been and will continue to be injured irreparably unless this misappropriation is enjoined by this Court.

49. As a result of IBM's misappropriation of trade secrets, Fair Isaac has been injured in an amount to be determined at trial, but in excess of $75,000.00, exclusive of costs and interest.

## RELIEF REQUESTED

WHEREFORE, Fair Isaac prays for judgment:

1. That IBM be preliminarily and permanently enjoined from making, using, selling, or offering to sell IBM Websphere Process Server V6 to the extent that it incorporates rules management technology that infringes any claim of the '566 Patent, and from engaging in any other infringement of the '566 Patent;

2. That IBM be preliminarily and permanently enjoined from making, using, selling, or offering to sell IBM Websphere Process Server V6 to the extent that it includes a rules management component that incorporates, or was developed with the aid of, Fair Isaac's trade secrets, and from making any further use of Fair Isaac's trade secrets;

3. That Fair Isaac be awarded damages resulting from by IBM's breach of contract, misappropriation of trade secrets and patent infringement, including pre- and post-judgment interest as provided by law;

4.  That Fair Isaac be awarded double damages, attorneys' fees and costs and expenses in this action pursuant to Minn. Stat. 325C.04, because IBM's misappropriation of trade secrets has been willful and malicious; and

5.  That Fair Isaac be awarded such other and further necessary and proper relief as this Court may deem just.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Dated: September ___, 2005

DORSEY & WHITNEY LLP

By _____
Craig D. Diviney (No. 23103)
Devan V. Padmanabhan (No. 240126)
Sri K. Sankaran (No. 204304)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

Attorneys for Plaintiff
Fair Isaac Corporation